IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MOSES MOHINGA,** | § | |
| **TDCJ No. 02552710,** | § | |
| Plaintiff, | § | |
| v. | § | A-25-CV-00527-RP |
| | § | |
| **SALLY HERNANDEZ, et al.,** | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff Moses Mohinga's 42 U.S.C. § 1983 complaint and Defendants' Motion to Dismiss. (ECF Nos. 1, 11.) Plaintiff is proceeding pro se and in forma pauperis. Upon review of the pleadings, the Court grants Defendants' motion to dismiss.

### Factual Background

Plaintiff is currently in the custody of the Texas Department of Criminal Justice—Correctional Institutions Division in the Coffield Unit; however, the incidents in his complaint occurred while he was a pretrial detainee at the Travis County Correctional Complex (TCCC). Plaintiff names the following defendants: Travis County Sheriff Sally Hernandez, Major Craig Smith, Lieutenant Garcia, TCCC Nurse Veronica Cruz, Jail Administrator Raul Banasco, and Travis County Internal Affairs Detective Lisa Lucas.

Plaintiff alleges that, on August 1, 2024, after he was transferred from a local hospital to TCCC, a TCCC staff member informed him he would be housed in a medical unit for proper care. However, instead, he was placed with mentally unstable inmates. Plaintiff alleges his initial cell assignment was not wheelchair-accessible, which shows the staff's indifference to his health and safety. After he requested to be put in a wheelchair accessible cell, he asserts his new cell was

visibly unsanitary: it was covered in feces and urine, had a broken emergency call button, and there were visible blood stains. He claims this violated his Fourteenth Amendment rights.

Plaintiff alleges that, on October 9, 2024, non-defendant Officer Newman ordered him to stand up out of his wheelchair. Plaintiff alleges he informed Newman he could not because of the injuries to his ankle. Plaintiff alleges Newman became infuriated with his response and attempted to flip him out of his wheelchair. Plaintiff states Newman injured his healing ankle and that he started to scream in pain. Plaintiff alleges Newman stopped but then drew her taser on his back and threatened to tase him if he did not comply with her order. He alleges her conduct was motivated by evil intent.

Plaintiff alleges that on October 29, 2024, he was ordered to clean a TCCC unit even though he was "visibly ADA." While cleaning, he states he slipped and refractured his left ankle, resulting in permanent nerve damage. He alleges a TCCC nurse told him the computer system listed him as restricted from doing all trustee work and that the (unnamed) jail officer who ordered him to clean should have known this. Plaintiff alleges the jail officer's supervisors are liable for the violation of his rights under the Fourteenth Amendment and the Americans with Disabilities Act (ADA).

Plaintiff next alleges that, on February 15, 2025, he was told by a non-defendant jail officer that he was not allowed to have a wheelchair, which Plaintiff disputed. Plaintiff alleges the officer told Plaintiff he didn't have a choice and refused when he asked her to contact her supervising sergeant for assistance. Plaintiff alleges she and other jail officers entered his cell, physically assaulted him to remove him from his wheelchair, and then tore off his medically-assigned orthopedic boot. This resulted in significant pain to his left ankle. Plaintiff states he was then tased several times and placed in a physical restraint chair with his broken ankle tightly handcuffed to

the chair. Plaintiff states he requested medical attention but that, upon arrival to the medical unit, Defendant Nurse Cruz did not examine his ankle. Plaintiff alleges Cruz was motivated by evil intent. Plaintiff alleges that another TCCC nurse, non-defendant John Udube, checked Plaintiff's medical files and told Plaintiff it showed he was allowed to have a wheelchair while he attended physical therapy. Plaintiff alleges it was Defendant Cruz who told the jail officers to confiscate his wheelchair, and that she had misread his medical files.

Plaintiff states his sister sent several email complaints to Defendants Sally Hernandez and Lt. Garcia. He alleges Lt. Garcia told his sister he was in charge of Plaintiff's safety. Plaintiff alleges his sister also sent complaints to Defendants Banasco and Smith, who responded by stating they were in charge of Plaintiff's safety. Plaintiff seeks $10 million in punitive damages.

Defendants move to dismiss Plaintiff's complaint, arguing Defendants Smith, Garcia, Cruz, Banasco, and Lucas are entitled to qualified immunity; they further argue that Plaintiff has only plead conclusory allegations and failed to plead these Defendants' personal involvement in any alleged constitutional violations. Defendants further argue Defendant Hernandez is entitled to qualified immunity, and that Plaintiff fails to adequately plead Hernandez's personal involvement in any alleged violations. Defendants further argue Plaintiff's allegations fail to state a claim under a failure-to-train theory of municipal liability. (ECF No. 11.) To date, Plaintiff has not responded to Defendants' motion to dismiss.

## Discussion & Analysis

1. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for

relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), a court will accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id*. Determining a complaint's plausibility is a "context-specific task," but if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint has failed to meet the pleading standard under Rule 8(a)(2). *Id*. at 678.

Defendants argue they are entitled to qualified immunity. Qualified immunity is a legal doctrine whereby government officials performing discretionary functions are shielded from liability for civil damages so long as their actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the motion-to-dismiss stage, a district court must find that the plaintiff's pleadings assert facts, which, if true, would overcome the defense of qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id*. Additionally, "when a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation ... to carefully scrutinize [the complaint] before subjecting public

4

officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019).

Qualified immunity is a two-step analysis. First, on a motion to dismiss, the plaintiff must allege sufficient facts showing a violation of her constitutional rights under current law. Second, a district court must determine whether the right in question was clearly established at the time of the alleged violation. If the plaintiff does not assert sufficient facts or the right was not clearly established, then a defendant is entitled to qualified immunity. *See Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (stating general contours of qualified immunity analysis); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts have discretion to decide which prong of the qualified immunity analysis should be analyzed first).

2. Personal Involvement

Defendants argue Plaintiff fails to allege their personal involvement in any of the alleged violations of his constitutional rights. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). With regard to Defendant Lisa Lucas, Plaintiff fails to allege any factual allegations against her in the entirety of his complaint. As a result, because Plaintiff fails to allege sufficient facts showing Lucas violated his constitutional rights, she is entitled to qualified immunity.

3. Supervisory Liability/Failure to Train

Plaintiff alleges his sister emailed Defendants Hernandez, Smith, Garcia, and Banasco with complaints detailing the alleged constitutional violations Plaintiff was experiencing at TCCC, and that Defendants Smith, Garcia, and Banasco responded by telling his sister they were in charge of Plaintiff's safety. Plaintiff does not, however, allege that any of these Defendants were personally involved in the incidents of which he complains. The Court therefore interprets Plaintiff as

claiming these Defendants, in their individual capacities, should be held liable because they supervised the jail officials who allegedly violated his constitutional rights.

When a plaintiff alleges that supervisory officials failed to train or supervise their subordinate officers, the plaintiff must prove that: (1) the supervisor failed to train or supervise a subordinate officer; (2) the existence of a causal link between the failure to train or supervise and the alleged constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Snyder v. Trepagnier*, 142 F.3d 791, 795-96 (5th Cir. 1998). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Snyder*, 142 F.3d at 798-99). "The plaintiff must generally demonstrate at least a pattern of similar violations . . . [and] the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id*. (internal citations omitted). "[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

Plaintiff's complaint wholly fails to meet this burden. Plaintiff alleges Defendants Hernandez, Garcia, Smith, and Banasco received emails from his sister complaining about his treatment at TCCC and that the latter three Defendants responded by stating they were in charge of Plaintiff's safety. The rest of Plaintiff's complaint details the actions of non-defendant jail officers. At no point does Plaintiff allege how Defendants were deliberately indifferent to the training of the

jail officers. Plaintiff's complaint, then, rests on the Court making an inference that, based on his allegations of maltreatment by TCCC jail officers, Defendants must have failed to train them adequately. But Plaintiff's inference is not supported by any factual allegations, and as such, fails to state a claim for relief. *Iqbal*, 566 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, to the extent Plaintiff brings this claim against Defendants Hernandez, Garcia, Smith, and Banasco in their individual capacities, they are entitled to qualified immunity.

To the extent Plaintiff seeks to sue Defendant Hernandez in her official capacity, this claim is governed by *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In her official capacity, a suit against Sheriff Hernandez is essentially a suit against Travis County. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent"). Under *Monell*, cities and counties may be held liable for monetary damages under section 1983 if the plaintiff establishes three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). Plaintiff fails to allege there is an official policy or that such a policy was the moving force behind an alleged violation of his constitutional rights. Accordingly, his claim against Defendant Hernandez in her official capacity fails as a matter of law.

4. Inadequate Medical Care

Plaintiff alleges Nurse Cruz violated his constitutional right to adequate medical care when she ordered TCCC employees to confiscate his wheelchair and then failed to treat his ankle. The

Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (citing *Hare*, 74 F.3d at 634-44). A pretrial detainee's Fourteenth Amendment rights include the right to medical care. *See Sanchez v. Young Cnty.*, 866 F.3d 274, 279 (5th Cir. 2017). Because the standard is essentially the same for both pretrial detainees and postconviction prisoners, cases applying the Eighth Amendment remain relevant to the Court's analysis.

To state a claim for deliberate indifference regarding his medical care, Plaintiff must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). Allegations of unsuccessful medical treatment, mere negligence, neglect, or medical malpractice do not give rise to a § 1983 action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam). "[A] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006)).

Here, Plaintiff's allegations against Nurse Cruz are insufficient to state a claim for deliberate indifference to medical care. He states that Cruz failed to treat his ankle after the February 15 incident but fails to allege what injury he sustained, or what harm resulted from Cruz's failure to treat. At most, the allegations amount to medical negligence or neglect, which are

insufficient for purposes to state a claim under § 1983. He also alleges Nurse Cruz "misread" his medical chart when she ordered TCCC employees to confiscate his wheelchair. Again, this allegation amounts to negligence, not deliberate indifference. As such, Plaintiff fails to state a claim for deliberate indifference to medical care against Nurse Cruz.

5. ADA

Finally, at two points in his complaint Plaintiff references the ADA: first, when he alleges he was originally not assigned a wheelchair-accessible cell and then was transferred to a cell covered with fecal matter and blood; and second, when he alleges a jail officer ordered him to clean the unit even though Plaintiff was "visibly ADA." To state a claim under the ADA, Plaintiff must show: (1) "he is a qualified individual"; (2) "he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity"; and (3) this "exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) (citing *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)). Because Plaintiff only seeks monetary damages against Defendants, he must also show the alleged conduct actually violates the Fourteenth Amendment and that the discrimination was intentional. *See United States v. Georgia*, 546 U.S. 151, 159 (2006); *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020). In the Fifth Circuit, intentional discrimination is "something more than deliberate indifference." *Id*.

Plaintiff does not name the individual jail officers who allegedly assigned him a non-wheelchair compatible cell, then a filthy cell, or ordered him to clean the unit visibly injured. He has also failed to allege how Defendants Hernandez, Garcia, Smith, or Banasco intentionally discriminated against him because he was injured. This claim fails as a matter of law.

9

It is therefore **ORDERED** that Defendants' Motion to Dismiss (ECF No. 11) is **GRANTED**. Plaintiff's complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

SIGNED this 17th day of November, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE